IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


VALHALLA CUSTOM HOMES, LLC, an
Oregon limited liability company,

        Plaintiff,

        v.

THE CITY OF PORTLAND, an Oregon
Municipal Corporation; TED WHEELER,
individually and in his official capacity;
CHLOE EUDALY, individually and in her
official capacity; CHRIS WARNER,
individually and in his official capacity;
KURT KRUEGER, individually and in his
official capacity; AMANDA OWINGS, in her
official capacity; and LEWIS WARDRIP in
his official capacity,

        Defendants.

_____

Case No. 3:21-cv-00225-JR

FINDINGS AND
RECOMMENDATION

RUSSO, Magistrate Judge:

       Pending before the Court is defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(1)

& (6). ECF 26. For the reasons stated below, defendants' motion to dismiss should be

GRANTED.

## BACKGROUND

       Plaintiff Valhalla Custom Homes, LLC is an Oregon business engaged in the

development of residential property. ECF 21 ¶¶ 13, 28. In September 2017, plaintiff purchased

two lots along NE Sumner Street in Portland, Oregon with the intention of developing two

attached residential housing units. ECF 21 ¶ 31. The Complaint fails to specify the precise

dimensions of the two lots, described by plaintiff each as a "Legal Lot of Record." ECF 21 ¶¶ 2,

55. The site plans for plaintiff's proposed development show each lot had 25 feet of private property frontage along NE Sumner Street. ECF 14 ¶ 2, Ex. 1 at 7.

Portland City Code ("PCC") 17.28.110.C.1 limits private property frontages less than 100 feet in length to one driveway. More than one driveway may be allowed, but only with the approval of the Director of the Portland Bureau of Transportation ("PBOT"). The Director is the official charged by City Council with the coordination and management of the City's transportation system. PCC 3.12.010. The rule exists because more driveways entering the public's right-of-way diminishes on-street parking and raises pedestrian and vehicular safety concerns. *See* PCC 17.28.110.C.4; PCC 17.28.110.C.5; PCC 17.28.110.D. To further implement the policy objectives of the City's driveway code, the Director promulgated and adopted Director's Policy 6.03 on May 31, 2017. This policy requires attached housing such as plaintiff's proposed development along NE Sumner to share a driveway. Plaintiff was aware of the Director's Policy by December, 2017. ECF 21 ¶ 40. Over a year later, on February 25, 2019, plaintiff submitted its application to the City to develop the Sumner Street attached housing project at issue here. ECF 21 ¶ 55.

Plaintiff objects to the plain reading of PCC 17.28.110.C.1, summarized above. Plaintiff further objects arguing the City's Transportation Director developed Director's Policy 6.03 electing to focus on driveways related to attached housing. Plaintiff insists it has a fundamental, constitutionally-protected property right to a driveway for each of its 25-foot lots. Plaintiff now seeks money damages for the Director's refusal to issue multiple driveway permits for the aggregate 50 feet of private property frontage along NE Sumner. ECF 21 ¶ 11. Although plaintiff no longer owns either lot, ECF 21 ¶ 74, nor is currently seeking to build residential homes with multiple driveways within 100 feet of private property frontage, ECF 21 ¶ 28, plaintiff seeks

declaratory and injunctive relief prohibiting the City from enforcing PCC 17.28.110.C.1 and the Director's Policy. ECF 21 ¶ 12.

PCC 17.28.110.C.1 is straightforward and clear in its calculation of allowable driveway permits for private property frontages under 100 feet in length. In addition, PCC 17.28.110.C.4 and C.5, PCC 17.28.110.D, and the Director's Policy 6.03 provide straightforward and clear guidance relating to the safety considerations for any variance from PCC 17.28.110.C.1. Plaintiff confronted the same constraint in September of 2018, when it made identical arguments about PCC 17.28.110 for another Portland, Oregon development project on Rodney Street. ECF 21 ¶ 49.

Plaintiff issues a broadside of legal challenges to the City's refusal to grant it two driveways for its Sumner Street development. Its first claim challenges PCC 17.28.110 as unconstitutionally void for vagueness. ECF 21 ¶¶ 98-110. The second claim alleges an unlawful delegation of legislative authority under Article I, Section 21 of the Oregon Constitution. *Id.* ¶¶ 111-15. The third and fourth claims allege defendants violated plaintiff's procedural and substantive due process rights under the Fourteenth Amendment. *Id.* ¶¶ 116-40. The fifth claim for relief pleads an equal protection violation (*Id.* ¶¶ 141-54), and claim six seeks declaratory and injunctive relief under federal law. *Id.* ¶¶ 155-59. Finally, claim seven alleges a state law fraud claim arising out of an earlier development project. *Id.* ¶¶ 160-90. Plaintiff's mile-wide, inch-deep approach to challenging the City's driveway approval scheme should be dismissed because this court lacks jurisdiction to hear plaintiff's injunctive and declaratory relief claims, and plaintiff otherwise fails to state a claim against the defendants.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move to dismiss a case for "lack of subject-matter jurisdiction." When a defendant correctly identifies a jurisdictional defect, "the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A defendant may raise justiciability issues such as sovereign immunity, mootness, and standing through a motion to dismiss under FRCP 12(b)(1). *See Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017) ("A sovereign immunity defense is 'quasi-jurisdictional' in nature and may be raised in either a Rule 12(b)(1) or 12(b)(6) motion."); *Rosemere Neighborhood Ass'n v. U.S. Envtl. Prot. Agency*, 581 F.3d 1169, 1172–73 (9th Cir. 2009) (mootness); *Alexander v. Kujok*, 158 F. Supp. 3d 1012, 1017 (E.D. Cal. 2016) (standing).

The plaintiff has the burden to establish that subject matter jurisdiction is proper. *See Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778-779 (9th Cir. 2000). To meet this burden, the plaintiff must show "affirmatively and distinctly the existence of whatever is essential to federal jurisdiction." *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001), *overruled on other grounds, Hertz Corp. v. Friend*, 559 U.S. 77, 82 (2010). A motion to dismiss for lack of subject matter jurisdiction may be a facial attack, where the allegations of the complaint are insufficient on their face to invoke federal jurisdiction, or a factual attack, where "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (citation and quotation marks omitted).

When the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, the complaint must allege "enough facts to state a claim to relief that is plausible

on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For purposes of the motion to dismiss, the complaint is liberally construed in plaintiff's favor and its allegations are taken as true. *Rosen v. Walters*, 719 F.2d 1422, 1424 (9th Cir. 1983). Regardless, bare assertions that amount to just a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Bacca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## DISCUSSION

### I.     The Claims for Declaratory and Injunctive Relief Should be Dismissed for Lack of Standing

The Court should begin with defendants' motion to dismiss for lack of jurisdiction. *See Gerlinger v. Amazon.com Inc., Borders Grp., Inc.,* 526 F.3d 1253, 1255 (9th Cir. 2008) (noting that Article III standing is "a jurisdictional prerequisite to the consideration of any federal claim"). And because the Court does not have subject matter jurisdiction over plaintiff's claim for declaratory and injunctive relief, Count Six should be dismissed.

#### 1.   *Plaintiff Lacks Standing to Pursue Injunctive Relief*

A plaintiff must demonstrate constitutional standing separately for each form of relief requested. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 185 (2000). For injunctive relief, which is a prospective remedy, the threat of injury must be "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). In other words, the "threatened injury must be certainly impending to constitute injury in fact" and "allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks and alteration omitted). Past wrongs, though

insufficient by themselves to grant standing, are "evidence bearing on whether there is a real and immediate threat of repeated injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation marks omitted). Where standing is premised entirely on the threat of repeated injury, a plaintiff must show "a sufficient likelihood that he will again be wronged in a similar way." *Id.* at 111. In determining whether an injury is similar, we "must be careful not to employ too narrow or technical an approach. Rather, we must examine the questions realistically: we must reject the temptation to parse too finely, and consider instead the context of the inquiry." *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005).

Here, plaintiff has not even attempted to establish a sufficient likelihood of future harm to entitle it to prospective equitable relief. Plaintiff voluntarily sold the Sumner Street property and makes no allegation that it owns any other properties or plans to develop other attached housing subject to PCC 17.28.110 or the Director's Policy, DRP 6.03. Plaintiff makes only general allegations that the City's Code and Director's Policy, unless enjoined, will "continue to violate plaintiff's and other property owners' legal rights." ECF 21 ¶¶ 158–159. These allegations fall short of satisfying the Article III standing requirement of showing an actual or imminent threat of injury that is concrete and particularized. A speculative or hypothetical future harm fails to satisfy constitutional muster, and this Complaint lacks any allegation of what plaintiff's future harm will be. Even if the Court were to grant plaintiff the equitable relief it seeks, it is unclear how that injury will be redressed by a favorable judicial decision. Therefore, plaintiff has failed to carry its burden of demonstrating redressability and of "demonstrate[ing] that the requisite threat of future harm actually exists." *Nelsen*, 895 F.2d at 1251 (citations and internal quotation marks omitted); *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 825 (9th Cir.

2020) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 420 (2013)) ("[a] plaintiff may not rely 'on mere conjecture about possible governmental actions' to demonstrate injury, and instead must present 'concrete evidence to substantiate their fears.'"). Therefore, because plaintiff has not alleged its business activities will again involve construction of attached, residential housing units, or that it is otherwise facing enforcement of the challenged statutes, the Court should dismiss plaintiff's claims for injunctive relief for lack of standing.

### 2. *Plaintiff Lacks Standing to Pursue Declaratory Relief*

The Court should likewise dismiss plaintiff's request for retrospective declaratory relief because such relief is beyond the power of an Article III court to provide. Declaratory relief is "retrospective to the extent that it is intertwined with a claim for monetary damages that requires [courts] to declare whether a past constitutional violation occurred. In such a situation, however, declaratory relief is superfluous in light of the damages claim." *National Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 847 n.5 (9th Cir. 2002) (internal citation omitted). Retrospective declaratory relief is not appropriate when it "would have much the same effect as a full-fledged award of damages." *Green v. Mansour*, 474 U.S. 64, 73 (1985). *See also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 288 (1997) (stating "[a] federal court cannot award retrospective [declaratory] relief, designed to remedy past violations of federal law") (internal citations omitted). Here, plaintiff seeks damages for alleged violations of a host of its civil rights. Because the declaration plaintiff seeks would be superfluous considering its damages request and would be nothing more than a retrospective opinion that its rights were violated, the Court should not entertain plaintiff's claim for retrospective declaratory relief. For these reasons, the Court should dismiss Count Six.

## II.    Plaintiff Fails to State a Claim Against Defendants

   *1.   Plaintiff Fails to State a Claim that PCC 17.28.110 is Void for Vagueness*

"A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). In deciding whether a statute is unconstitutionally vague, the court must consider the regulations purporting to construe the statute in addition to the statute itself. *See United States Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548 (1973) (rejecting a challenge to a statute as unconstitutionally vague and overbroad after considering the statute and the regulations construing the statute).

Plaintiff's vagueness challenge, at its core, appears to be that PCC 17.28.110 vests too much discretion in the Director to deny multiple driveway permits despite the clear and objective standards set forth in PCC 17.28.110.C.1. *See* ECF 21 ¶¶ 106-108. Plaintiff alleges that the Code does "not state under what conditions the Director is to conclude that the apparent clear and objective standards on the face of the Driveway Ordinance are insufficient to achieve the goals articulated in Title 17 and the Driveway Ordinance." ECF 21 ¶ 107(f). Plaintiff's response to the motion to dismiss further focuses on the Director's "veto power and unfettered discretion to require modifications to, or impose conditions on, any driveway permit application based upon his judgment alone" as the basis for its vagueness challenge. These allegations are at odds with a commonsense reading of PCC 17.28.110.

As discussed above, the plain language of PCC 17.28.110.C.1 provides that more than one driveway *may* be allowed, but it does not entitle applicants to multiple driveways, and in fact requires the Director's approval for multiple driveways for frontage up to 100 feet. PCC

17.28.110.C.4 allows variances from the width and location determinations of PCC

17.28.110.C.1 provided "the safe and orderly flow of pedestrian and vehicular traffic" is assured.

PCC 17.28.110.C.5 provides that the Director may establish conditions regarding the number and

configuration of driveways "necessary to ensure the safe and orderly flow of pedestrians,

bicycles, and vehicular traffic, preserve on-street parking, preserve or establish street trees,

maximize opportunities for vegetated stormwater management, reduce conflicts with pedestrians

and bicycles and enhance the pedestrian environment." *Id.* Pursuant to the Code's mandate, the

Director's Policy 6.03 cited to PCC 17.28.110.C.1 and C.5 as its sources of authority and

explained that allowing separate driveways for attached housing adversely impacted on-street

parking and that a shared driveway policy was necessary to preserve such parking. *See* ECF 21

Ex. A.

Under the first possible basis for vagueness, the terms of PCC 17.28.110, on their face,

are not unconstitutionally vague because they provide notice to a person of ordinary intelligence

that the number of driveways associated with a given development may be limited to preserve

on-street parking, among other factors.[1] The Code provision's terms are commonly used words

requiring no guessing as to their meaning. *See Cameron v. Johnson* 390 U.S. 611, 616 (1968).

---

[1] Plaintiff's reference to ORS 92.017 does not change the analysis. Plaintiff attempts to muddle the plain reading of PCC 17.28.110.C.1 by contending that ORS 92.017 somehow requires the City to treat each 25-foot frontage at its Sumner Street development as independent "private property frontage" each entitled to a driveway permit. *See* ECF 39 at 40-41. ORS 92.017 does not limit a local government's ability to impose development restrictions on discrete "Lots of Record" when those restrictions serve a legitimate government purpose and achieve that purpose in a permissible manner. *See Thomas v. Wasco County*, supra, at *3. *See also Campbell v. Multnomah County*, 25 LUBA 479, 482 (Or. Luba) 1993 WL 1473308, at *3. ORS 92.017's requirement that local governments "recognize lawfully created lots as separately transferrable units of land does not mean a local government must also allow each such lawfully created lot to be developed separately." *Id*. In other words, ORS 92.017 is a limitation on a local government's ability to restrict transferability, not a limitation on a local government's ability to restrict development or reasonably manage traffic flow. In sum, ORS 92.017 does not change the vagueness analysis of PCC 17.28.110.

Private property frontage up to 100 feet will be allowed a single driveway, subject to the specified dimensions. PCC 17.28.110.C. Multiple driveways for private property frontages up to 100-feet in length may be allowed, with the Director and City Engineer's approval. The clarity of the language in PC17.28.110C is not seriously in dispute, and plaintiff fails to show that a person of ordinary intelligence would not understand their meaning. The Complaint therefore fails to establish the Code as void for vagueness under the first basis.

Plaintiff's vagueness challenge also fails under the second possibility identified in *Hill*: that PCC 17.28.110 "authorizes or even encourages arbitrary and discriminatory enforcement." *See Hill,* 530 U.S. at 732. The factors delineated in PCC 17.28.110.C.4 and C.5 cabin the Director's discretion, providing reasoned bases for enforcement, and prevent the arbitrary or discriminatory enforcement of plaintiff claims. *See* PCC 17.28.110.C.4 and C.5. This is the clear implication of the text of PCC 17.28.110.C.1, even without regard to DRP 6.03. Indeed, the Code elsewhere provides the Director explicit authority "to issue administrative rules and regulations… as are appropriate to provide for the adequate functioning of the Bureau and to carry out the responsibilities under this Section." PCC 3.12.010. Because the Director's discretion is tied to factors in PCC 17.28.110.C.4 and C.5, and it was not arbitrary or discriminatory to implement Policy 6.03, the Court should find PCC 17.28.110 is not unconstitutionally vague under the second *Hill* possibility. Count One should be dismissed.[2]

---

[2] Because plaintiff has not shown that PCC 17.28.110 was unconstitutionally vague as applied to it, the facial attack must also fail because plaintiff cannot show that the law is invalid in all of its applications. *See Kashem v. Barr*, 941 F.3d 358, 375 (9th Cir. 2019) ("Thus, as a general matter, a defendant who cannot sustain an as-applied vagueness challenge to a statute cannot be the one to make a facial vagueness challenge to the statute."). And since plaintiff's conduct—developing attached housing with multiple driveways—was "clearly proscribed" by PCC 17.28.110 and its implementing Director's Policy, plaintiff "cannot be the one to make a facial vagueness challenge." *Id.* at 376.

*2. Plaintiff's Substantive Due Process Claim Should be Dismissed*

Plaintiffs seeking relief for violation of substantive rights protected by the due process clause of the Fourteenth Amendment must allege violation of a right "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). To violate such a constitutionally protected right, the alleged government conduct must "[s]hock the conscience" and "offend the community's sense of fair play and decency." *Rochin v. California*, 342 U.S. 165, 172–73 (1952). However, "[g]overnment action that affects only economic interests does not implicate fundamental rights." *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1058 (9th Cir. 2012). Where fundamental rights are not implicated, the government action is reviewed only for a rational basis. *Witt v. Dep't. of Air Force*, 527 F.3d 806, 817 (9th Cir. 2012). Where rational basis applies, "the Court determines whether government action is so arbitrary that a rational basis for the action cannot even be conceived post hoc." *Id.* Rational basis review is a "highly deferential" standard. *Flynn v. Holder*, 684 F.3d 852, 858 (9th Cir. 2012). "When executive action like a discrete permitting decision is at issue, only 'egregious official conduct can be said to be arbitrary in the constitutional sense': it must amount to an abuse of power lacking any 'reasonable justification in the service of a legitimate governmental objective.'" *Shanks*, 540 F.3d at 1088 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Even "[o]fficial decisions that rest on an erroneous legal interpretation are not necessarily constitutionally arbitrary." *Shanks*, 540 F.3d at 1089.

As defendants rightly point out, plaintiff has not alleged any right grounded in the concept of ordered liberty. Plaintiff alleges that it has a "right of access from private property to an abutting street" and that this right is "a protected property right under the 14th Amendment."

ECF 21 ¶ 37. However, plaintiff conflates a right of access to a constitutional right to on-site parking or the driveway design of its choice. Plaintiff has no such fundamental, constitutional right, and cannot point to any case law that recognizes such a right as protectable under the Fourteenth Amendment. To suggest that refusal to grant a preferred dual-driveway plan "shocks the conscience" strains this Court's credulity. The Court should therefore find, as an initial matter, that plaintiff failed to allege violation of the kind of right protected by the Due Process Clause, and should apply rational basis review.

Even if the due process clause protected such a right, plaintiff has not alleged how a shared driveway deprives it of that right, or carried its burden to show the state lacks rational basis for its Policy. In Oregon, "an abutting property owner's right of access does not ensure access at the most direct or convenient location." *State ex rel. Dep't of Transp. v. Alderwoods (Oregon), Inc.*, 358 Or. 501, 515 (2015). And furthermore, whatever limitation PCC 17.28.110 places on plaintiff's right easily passes rational basis scrutiny. *See Eastman v. Anderson,* 2009 WL 1653111, at *8 (D. Or. June 10, 2009) (finding "an abutting property owner's common-law right to public road access is qualified by the State's inherent power to protect the public safety, convenience, and welfare…"); *see also* ECF 26 (noting the many public safety reasons for the Director's Policy). Plaintiff does not dispute these valid public safety concerns related to the Director's policy. Therefore, any alleged burden on plaintiff's "right" survives rational basis scrutiny. The Court should dismiss Count Four.

### 3. *Plaintiff's Procedural Due Process Claim Should Be Dismissed*

"A 'procedural due process claim hinges on proof of two elements: (1) a protectible liberty or property interest; and (2) a denial of adequate procedural protections.'" *Thornton*, 425

F.3d at 1164 (quoting *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998)). Plaintiff cannot establish either element.

First, as addressed above, plaintiff lacks any protected property interest in its desire to have either on-site parking or two driveways at its Sumner Street attached housing development. Plaintiff has no right to on-site parking because the development is not landlocked and abuts Sumner Street. And even if plaintiff has a right for its attached housing development to access Sumner Street with a driveway, plaintiff has no protected right to its preferred choice of design of two driveways because PCC 17.28.110.C.1 clearly provides for access via a single driveway. The procedural due process claim should therefore be dismissed as an initial matter because plaintiff has not identified a protectible liberty or property interest underlying its claim.

If plaintiff had a protected interest in on-site parking or separate driveways, it still must allege that it suffered the deprivation of that right without due process. "Precisely what procedures the Due Process Clause requires in any given case is a function of context." *Gregory*, 2019 WL 2420548, at *30. Determining what procedural protections are required "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). What process is due is determined in accordance with the three-part balancing test outlined in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976):

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

> Failure to use available process, however, is not a failure of due process. Here, plaintiff did not even seek the PBOT Director's approval under PCC 17.28.110.C.1 for multiple

driveways. *See* ECF 14, Ex. 1. Instead, plaintiff crossed out and rejected the section of its Exception Request Form allowing the Director's approval, and requested review of its application "consistent with the requirements of ORS 197.307(4)." *Id.* By voluntarily opting out of the available process to obtain separate driveways, plaintiff also opted out of a future due process claim.

Plaintiff likewise failed to use the available Writ of Review process, ORS 34.010 *et seq.*, to challenge PBOT's denial of its Design Exception Request Form. When Ms. Owings first considered and evaluated Plaintiff's Driveway Design Exception Request Form, and then authored and issued PBOT's Driveway Decision Form, Owings was rendering a quasi-judicial decision in accordance with ORS 34.020. A quasi-judicial, as opposed to a legislative or administrative decision, is characterized by the necessity of applying pre-existing criteria to concrete facts that results in a determination based on a closely circumscribed factual situation or a relatively small number of persons. *Strawberry Hill 4 Wheelers v. Bd. of Comm'rs for Benton Cty.*, 287 Or. 591, 602–03 (1979). Plaintiff could have challenged this quasi-judicial decision under the writ of review process within 60 days. ORS 34.030. Plaintiff did not do so. Again, plaintiff's failure to use available and adequate process is not a failure of due process.

Plaintiff had yet another procedural avenue open to it under ORS 197.319-197.350, which sets out how Oregon's Land Conservation and Development Commission  ("LCDC") enforces Oregon's land use planning requirements, including ORS 197.307.[3] ORS 197.320(10) provides that LCDC will order a local government to change its land use regulations if "the local government's approval standards, special conditions on approval of specific development

---

[3] As defendants point out, plaintiff used this process before to challenge PCC 17.28.110.C.1 in the context of its Rodney Street project. *See* ECF 15 ¶ 3, Ex.4.

proposals or procedures for approval do not comply with ORS 197.307(4) or (6)." Like it did on the Rodney Street project, plaintiff could have used ORS 197.319 *et seq.* to challenge Ms. Owings' decision, but it failed to use the available and adequate process the state provided to remedy its alleged wrong. Therefore, because plaintiff declined the readily available state law processes to challenge an unfavorable decision, the Court should find it has not pled a violation of its rights under the due process clause and dismiss Count Three.

### 4. *Plaintiff Fails to State a Claim Under the Equal Protection Clause*

As an initial matter, plaintiff's equal protection claim should be dismissed because it does not identify another similarly situated party that has been treated differently by defendants. The Equal Protection Clause does not forbid classifications. But it does keep governmental decisionmakers from treating differently persons who are "in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10, (1992). "Evidence of different treatment of unlike groups does not support an equal protection claim." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1168 (9th Cir. 2005).

The two groups alleged here—plaintiff, with attached housing and the subsequent owner with detached housing—are not similarly situated. Plaintiff's proposal for attached housing shared a lot line and common wall. *See* ECF 14, Ex.1 at 7. Pertinent here, plaintiff's proposal for a shared lot line and common wall between Unit Townhouses A and B eliminated any necessary set back from the property line, which the subsequent owner's proposal would need. *See* PCC 33.120.230.A; *see also* PCC Chapter 33.120, Table 120-3. In this regard, the two groups are not similarly situated, and an Equal Protection analysis does not apply. This is a "relevant aspect" because, as plaintiff acknowledges in its response brief, defendants "determined they would treat applications for driveway permits differently *based on whether the proposed housing was*

*attached or detached*." ECF 26 at 43 (emphasis added). Whether defendants exceeded their authority in making this distinction is irrelevant to the threshold equal protection inquiry—were two parties identical in relevant respects treated differently. Because plaintiff does not allege it was treated differently from such a similarly situated party in its Complaint, the equal protection claim should be denied.

If the Court accepts that plaintiff has pled this threshold requirement for an equal protection claim, it should dismiss the claim all same because the defendants' behavior passes rational basis review. The Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. The Equal Protection Clause does not forbid classifications but rather "simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). Laws alleged to violate the constitutional guarantee of equal protection are generally subject to one of three levels of "scrutiny" by courts: strict scrutiny, intermediate scrutiny, or rational basis review. *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 543 (9th Cir. 2004). Strict scrutiny applies when the classification is made on "suspect" grounds such as race, ancestry, alienage, or categorizations impinging upon fundamental rights. *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1277 (9th Cir. 2004). Fundamental rights such as privacy, marriage, voting, travel, and freedom of association have also been afforded strict scrutiny review. *Hoffman v. United States*, 767 F.2d 1431, 1435 (9th Cir. 1985). In contrast, the Supreme Court has held that other rights are not fundamental, such as the right to government employment, *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307 (1976), or the right to a public education, *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1973). "[U]nless a classification warrants some form of heightened review because it jeopardizes exercise of a

fundamental right or categorizes on the basis of an inherently suspect characteristic," courts will apply rational basis review and only consider whether the statute "rationally further[s] a legitimate state interest." *Nordlinger*, 505 U.S. at 10.

Because the City has a rational basis for implementing its driveway ordinances in furtherance of public safety, and plaintiff has not borne its burden to show otherwise, the Court should find PCC 17.28.110 does not violate plaintiff's rights under the Equal Protection Clause. Under rational basis review, "legislation is presumed to be valid and will be sustained if the classification drawn by statute is rationally-related to a legitimate state interest." *City of Cleburne, Tex.*, 473 U.S. at 44. Plaintiff appears to argue that the "attached v. detached classification" is "arbitrary" and *ultra vires*, and therefore cannot be rationally related to a legitimate interest. ECF 39 at 54. But conclusorily stating defendants' actions were *ultra vires* as a matter of state law does not establish the action is unrelated to a legitimate interest. The City unquestionably has a legitimate public safety interest in limiting the number of driveways to manage traffic flow and protect on-street parking. *See* ECF 26 at 43 (explaining the City's rationale for the "attached v. detached" distinction.). And, far from being *ultra vires*, defendants' actions were specifically endorsed by state law. *See* PCC 17.28.110.C.1, PCC 3.12.010. Plaintiff does not muster a response to why this stated rationale is illegitimate, and as a result, fails to carry its burden to show defendants' classification (assuming the parties are similarly situated) violates plaintiff's rights under the Equal Protection Clause. Ultimately, defendants have a rational basis for the distinction at issue in this case, and plaintiff's equal protection claim should be denied. The Court should dismiss Count 5 for failure to state a claim.

### 5. Plaintiff Fails to State Supervisory Liability Claims Against Individual Defendants

On top of these other pleading deficiencies, plaintiff does not state a claim against either defendant Wheeler or Eudaly.[4] A supervisory official is liable under § 1983 so long as "there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018) (quoting *Starr*, 652 F.3d at 1207). "The requisite causal connection can be established ... by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." Starr, 652 F.3d at 1207–08 (internal quotation marks and citations omitted) (alterations in original). Thus, a supervisor may "be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Keates*, 883 F.3d at 1243 (quoting *Starr*, 652 F.3d at 1208)

Plaintiff alleges that defendant Eudaly knew of and failed to stop PBOT's allegedly unconstitutional application of PCC 17.28.110 and defendant Wheeler  failed to "end the City's policy of allowing the [PBOT] Director" to exercise the Director's discretion to issue driveway permits under PCC 17.28.110 "without notice, a hearing or a right of local appeal to a neutral decision maker." ECF 21 ¶¶ 92-94. But, crucially, plaintiff does not plead the kind of "causal connection" required to bring a supervisory claim against either individual, because neither had

---

[4] Plaintiff's complaint brings vagueness, substantive due process, procedural due process, equal protection, and declaratory judgment claims against defendants Wheeler and Eudaly. *See* ECF 21. Because plaintiff explains its defense of the supervisory liability claims as "deprivation of property without due process of law," the Court considers only whether plaintiff has stated a claim against these individual defendants on the due process claims, Counts Three and Four.

supervisory control over the relevant decisions. As plaintiff alleges, "[t]he City's policy of not imposing procedural requirements on the Director's exercise of discretionary authority to issue, refuse to issue, issue with conditions, or revoke driveway permits was implemented by the City Council and the City Council has authority to change the policy." ECF 21 ¶ 90. Therefore, even assuming plaintiff pled plausible civil rights claims (it does not), no claim lies against the individual defendants because neither individual had the power to rectify the supposed constitutional violations; plaintiff's allegations that the individual defendants "took no action to end the City's policy" is meaningless if these defendants did not have the power to end the policy. ECF 26 at 54-56. Because plaintiff's complaint overlooks this crucial step, the Court should find it has not pled actionable Section 1983 claims for deliberate indifference against either individual defendant, and dismiss these two defendants from the case.

### 6. *Plaintiff's Nondelegation Claim Should Be Dismissed*[5]

---

[5] Defendants did not brief the issue of supplemental jurisdiction, but if the Court so chooses, upon dismissing plaintiff's meritless federal claims it could dismiss the state law claims as well under 28 U.S.C. § 1367. The Court's exercise of supplemental jurisdiction over these state law claims is discretionary. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction...." *See also Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir.1997) ("[A] federal district court with power to hear state law claims has discretion to keep, or decline to keep, them under the conditions set out in § 1367(c)"). Under that statute, district courts may also decline to exercise supplemental jurisdiction over a claim if the claim raises a novel or complex issue of state law. 28 U.S.C. § 1367(c). If the Court agrees that plaintiff fails to plead any federal cause of action, it could decline jurisdiction over the state law claims, in particular Count Two, because the scope of the nondelegation principle under the Oregon constitution is a complex matter of state law, better decided by Oregon courts. *Cf. Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 (1941).

The Court could likewise decline supplemental jurisdiction over Count Seven because it arises out of a completely different set of facts than plaintiff's federal claims. Though the parties do not address the court's jurisdiction over Count Seven, the propriety of exercising supplemental jurisdiction can be raised *sua sponte* by the courts. *See Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 n.3 (9th Cir. 1997). The factual grist of Count Seven relates to an entirely different property development, and a set of alleged misrepresentations that (while related in subject matter) do not arise from the "same nucleus of operative facts" as plaintiff's federal claims. Because Count Seven would require an entirely different set of

In addition to the five federal claims, the Complaint alleges a violation of the nondelegation principle of the Oregon Constitution and common law fraud in the inducement. If it chooses to exercise supplemental jurisdiction, the Court should deny plaintiff's state law claims for failure to state a claim.

In its second claim for relief, plaintiff alleges that the City of Portland unlawfully delegated legislative authority to the Director of PBOT in violation of Article I, Section 21 of the Oregon Constitution. The constraints of Article I, Section 21, apply only to the delegation of the legislative authority to enact laws—that is, "the constitutional function of the legislature to declare whether there is to be a law; and, if so, what are its terms." *Marr v. Fisher et al.*, 182 Or. 383, 388, (1947). That is, Article 1, Section 21 speaks to limits on the Oregon *legislature*'s ability to delegate its legislative power, not intra-municipal delegations like those at issue here. *See Miller v. Ford Motor Company,* 363 Or. 105, 116 (2018) (noting that "Article I, section 21, prohibits *the legislature* from 'confer[ring] upon any person, officer, agency or tribunal the power to determine what the law shall be'") (internal citation omitted) (emphasis added). Plaintiff alleges the City—not the Oregon legislature—unlawfully delegated their legislative power. ECF 21 ¶¶ 112-13. Because plaintiff does not allege any delegation by the Oregon legislature, its second claim for relief should be dismissed for failure to state a basic, threshold element of a nondelegation claim under the Oregon constitution.

Even if Article I, Section 21 applies, Count Two should be dismissed because plaintiff fails to state a plausible claim. This section proscribes delegation absent "procedural safeguards

---

evidence, and has no relevant overlap with the other claims, the court could elect not to exercise supplemental jurisdiction over Count Seven.

to protect against the unaccountable exercise of government power." *Corvallis Lodge No. 1411 v. OLCC*, 67 Or. App. at 22 (1984). The City Council has provided just such safeguards here by including PCC 17.28.110.C.1's 100-foot per permit limitation, and then by giving the Director authority to grant more than one permit, and outlining the public safety criteria in PCC 17.28.110.C4 and C5, and PCC 17.28.110.D. Therefore, even if the nondelegation framework applies to these facts, the Court should find plaintiff cannot state a claim because the delegation carries with it sufficient procedural safeguards and limiting principles for the Director to follow. *See* PCC 17.28.110.C4 and C5, and PCC 17.28.110D.

### 7. *Plaintiff's Fraud Claim Should be Dismissed*

The Court should likewise dismiss plaintiff's state law fraud claim. Plaintiff's theory of fraud appears to be that a June 8, 2018 letter from a deputy city attorney concerning the Rodney Project falsely represented that ORS 197.307(4) applied to driveway permits issued by the City under PCC 17.28.110. ECF 21 ¶ 168. Plaintiff alleges it relied on this false representation when it entered into the settlement agreement resolving its dispute with the City concerning the Rodney Project. *Id.* ¶ 173. Plaintiff alleges it then relied on this false representation when it decided to keep its Sumner street project rather than selling it. *Id.* 186. Plaintiff alleges it discovered the City's fraudulent misrepresentation on May 24, 2019, after it received a letter from another deputy city attorney explaining that permits to access the City's right-of-way, such as driveway permits, were not permits "regulating the development of needed housing." *Id.* ¶¶ 161, 176. Based on this alleged fraud, plaintiff asks the Court to void the settlement agreement between plaintiff and the City concerning the Rodney Project.

A claim for fraud is a tort falling under the Oregon Tort Claims Act, and requires plaintiff to present timely tort claim notice. ORS 30.260(8); 30.275(1). Here, timely tort claim notice

would mean plaintiff presented its claim to the City within 180 days of May 24, 2019 upon discovering the fraudulent misrepresentation. ORS 30.275(2)(b). Plaintiff did not plead that it filed any such notice. Consequently, the Court has no jurisdiction to hear this claim, and the Court should dismiss it. *Johnson v. Smith*, 24 Or. App. 621, 625-26 (1976) (noting that pleading timely tort claim notice in a complaint is a jurisdictional requirement to bringing a claim under the Oregon Tort Claims Act.).

Plaintiff contends its October 25, 2019 tort claim notice with respect to the Sumner Street project met the formal notice requirements of the Oregon Tort Claims Act, ORS 30.275(4) for its fraud claim related to the Settlement Agreement for its dispute concerning plaintiff's Rodney Street project. ECF 39 at 50. To satisfy the statutory formal notice requirement, plaintiff must provide "[a] description of the time, place and circumstances giving rise to the claim, so far as known to the claimant." ORS 30.275(4)(b). Plaintiff cites *Flug v. University of Oregon*, 335 Or. 540 (2003) for the proposition that it does not have to identify the specific legal claim it intends to bring to satisfy ORS 30.275(4). ECF 39 at 50. This is true. However, plaintiff's tort claim for the Sumner Street project completely fails to mention the Rodney Street project Settlement Agreement. Further, even the June 8, 2018 letter from Ms. King, referred to in plaintiff's tort claim notice, fails to mention the Rodney Street project Settlement Agreement. See ECF 27, ¶ 3, Ex. 5. The notice simply states that the City took a contrary position with respect to the applicability of ORS 197.307(4) before the LCDC on another matter; this information is not sufficient to inform the City of "the time, place and circumstances" giving rise to its fraud claim as required by ORS 30.275(4). Plaintiff's notice is therefore deficient, and the Court should find it does not qualify for purposes of the Oregon Tort Claims Act.

Substantively, plaintiff also fails to plead any fraud or concealment. PCC 17.28.110 is clear on its face. To the extent it applies to "needed housing" under ORS 197.307, its terms for obtaining a driveway permit are clear and objective on its face. Indeed, the Oregon Department of Land Conservation and Development came to that same conclusion when it issued its recommendation to the state LCDC in September 13, 2018 concerning plaintiff's dispute with the City over the multiple driveways at the Rodney Project. *See* ECF 27 ¶ 3, Ex. 5. On the other hand, the May 24, 2019 letter more generally related to the City's authority to regulate the right-of-way. *See* ECF 29), ¶ 2, Ex. 7. This meaning is clear on the face of both letters. As a result, plaintiff's misreading of these letters cannot serve as the basis for any fraud claim related to the Rodney Street project Settlement Agreement. The Court should dismiss Count Seven for failure to state a claim.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (ECF 26) should be granted; and the parties' request for oral argument is denied as unnecessary.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a

waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 17th day of September, 2021.


 /s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge